UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>      Plaintiffs,<br><br>vs.<br><br>BTW PRODUCTIONS, INC.,<br><br>      Defendant. | **COMPLAINT**<br><br>Civil Action No. |

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan ("Plans") allege:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, § 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA") [29 U.S.C. § 1132(e)(1)] and § 301 of the Labor-Management Relations Act (hereinafter "LMRA") [29 U.S.C. § 185(a)].  This is an action by the Plans for breach of a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting commerce and to enforce § 515 of ERISA [29 U.S.C. § 1145] as amended by § 306(a) of the Multi-Employer Pension Plan Amendments Act of 1980 (hereinafter "MPPAA"), P.L. 96-364.

2. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in § 502(f) of ERISA [29 U.S.C. § 1132(f)] and § 301(a) of the LMRA [29 U.S.C. § 185(a)].

3. Venue is based on the Defendant's residence and the place where the Plans are administered. Defendant BTW Productions, Inc. ("BTW") has its principal place of business in the Southern District of New York, and the Plans maintain offices in the District. As such, venue is appropriate pursuant to § 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)] and under § 301 of the LMRA [29 U.S.C. § 185(a)].

**PARTIES**

4. The Directors of the Plans ("Directors") are trustees who administer the assets of the Plans. The Plans are "employee benefit plans" within the meaning of section 3 of ERISA [29 U.S.C. § 1002] in that they were created pursuant to written declarations of trust ("Trust Agreements") between the International Alliance of Theatrical Stage Employees ("IA"), and motion picture and television producer employers, and are maintained for the purpose of providing their participants and beneficiaries with retirement benefits as well as medical, surgical and hospital benefits in the event of sickness, accident, disability or death. The Plans were created and now exist pursuant to section 302(c) of the LMRA [29 U.S.C. § 186(c)].

5. The Directors are fiduciaries under ERISA and have an obligation to protect the Plans' assets, including by ensuring that employers are properly remitting pension and health contributions to the Plans as required under collective bargaining agreements between the IA and motion picture and television producer employers ("CBAs"). Under the Trust Agreements, the Directors have control and authority over the Plans, including the authority to file actions to enforce the terms of the Plans with respect to employers' obligations to pay contributions.

6. The Plans are "multiemployer plans" within the meaning of ERISA section 3(37)(A) [29 U.S.C. § 1002(37)(A)] in that more than one employer is required to contribute to the Plans and the Plans are maintained pursuant to the CBAs.

7. At all times material herein, the IA has been a labor organization representing employees in the motion picture and television business, an industry affecting commerce within the meaning of LMRA section 501(1) [29 U.S.C. § 142(1)].

8. At all times material herein, Defendant BTW has been a registered corporation organized and existing under the laws of the State of New York.  BTW is an "employer" within the meaning of ERISA section 3(5) [29 U.S.C. § 1002(5)] and LMRA section 501(3) [29 U.S.C. § 142(3)].  As such, BTW is an employer as that term is used in section 301(a) of the LMRA [29 U.S.C. § 185(a)].

9. At all times material herein, Defendant BTW was a signatory to collective bargaining agreements and trust agreements obligating the company to make contributions to the Plans in connection with work performed by IA-represented individuals during the production of the televised broadcast entitled "The Espy Awards," which BTW has produced on an annual basis throughout the relevant period.

## FIRST CAUSE OF ACTION

(Breach of Collective Bargaining Agreement and Trust Agreements –

Payroll-Based Contributions)

10. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 9 as though fully set forth herein.

11. At all times material herein, BTW has been a signatory to the CBAs and has agreed to be bound by the terms and conditions of the Trust Agreements creating the Plans.  At all times material herein, BTW has been obligated to comply with the terms and provisions of the CBAs and Trust Agreements.

12. Pursuant to the terms of the CBAs and Trust Agreements, the Plans have the authority to conduct an audit of the books and records of signatory employers for the purpose of determining the accuracy of pension and health contributions made to the Plans including, but not limited to, payroll records and any other books or records which the Plans deem necessary in connection with the proper administration of the Plans.  The Trust Agreements provide that if such an audit discloses a delinquency or underpayment, the costs of the audit shall be borne by the signatory who is found to be delinquent, and that if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

13. On or about September 20, 2011, the Plans announced a payroll audit of BTW ("First Audit") for the period September 20, 2007 to September 20, 2011. On July 15, 2013, the Plans issued an audit report ("First Report"). As detailed in the First Report, the First Audit found that $5,045.91 in unpaid contributions was due for work performed by various IA-represented individuals.

14. On or about April 3, 2014, the Plans announced another payroll audit of BTW ("Second Audit") for the period September 21, 2011 to March 29, 2014. On May 8, 2017, the Plans issued a second audit report ("Second Report"). As detailed in the Second Report, the Second Audit found that $2,188.69 in unpaid contributions was due for work performed by various IA-represented individuals.

15. On or about June 23, 2017, the Plans announced another payroll audit of BTW ("Third Audit") for the period March 30, 2014 to June 17, 2017. On June 27, 2018, the Plans issued a third audit report ("Third Report"). As detailed in the Third Report, the Third Audit found that $1,210.23 in unpaid contributions was due for work performed by various IA-represented individuals.

16. Despite several demands, BTW has failed to pay the claims asserted by the Plans. BTW refuses, and continues to refuse, to pay the amounts due for unpaid contributions disclosed by the First, Second and Third Audits.

17. Pursuant to the CBAs, Trust Agreements, and 29 U.S.C. § 1132(g)(2), BTW agreed to pay the Plans interest at the annual rate of 12 percent on all unpaid contributions from the dates the sums were originally due to the Plans to the date of judgment. The Plans are informed and believe, and thereon allege, that interest is due to the Plans by BTW in an amount to be established by proof at the trial herein.

18. Pursuant to the CBAs, Trust Agreements, and 29 U.S.C. § 1132(g)(2), BTW agreed that in the event it failed to pay contributions when due, it would be considered delinquent with the Plans and would pay the Plans the sum of 20 percent of the total amount then due, or interest on the amount due at the rate of 12 percent from the date 10 business days after

notice of the claim, whichever is greater, as liquidated damages for each delinquency.  The Plans are informed and believe, and thereon allege, that liquidated damages are due to the Plans by BTW, in an amount to be established by proof at trial.

19.     By the CBAs and Trust Agreements, BTW also agreed that in the event of any delinquency, it would pay legal and audit costs in connection therewith, whether before or after litigation is commenced.  These costs will be established by proof at trial.

20.     It has been necessary for the Plans to engage the law firms of Bush Gottlieb and Spivak Lipton LLP for the purpose of collecting all amounts due.  Pursuant to the CBAs, Trust Agreements, and 29 U.S.C. § 1132(g)(2), the Plans are entitled to their reasonable attorneys' fees in connection therewith.

21.     At all times material herein, BTW was under an affirmative duty, pursuant to the terms of the CBAs and Trust Agreements, to provide the Plans with information so that they may determine whether payroll contributions paid were proper and to pay the Plans the correct amount of contributions.  The Directors are informed and believe, and on that basis allege, that BTW failed to accurately report this information and pay the contributions.  The Directors reposed trust and confidence in BTW and relied on BTW to accurately report and pay the correct amount of contributions to the Plans so as to toll the statute of limitations, if applicable.

## SECOND CAUSE OF ACTION
(Claim for Damages for Violation of ERISA)

22.     The Plans incorporate by reference each allegation contained in Paragraphs 1 through 20 as though fully set forth herein.

23.     Pursuant to 29 U.S.C. §§ 1132 and 1145, the Plans are entitled to the unpaid contributions, interest thereon at the contractual rate, an additional amount equivalent to contractual interest or liquidated damages at 20 percent, whichever is greater, reasonable attorneys' fees, audit costs, costs of this action, and such other legal and equitable relief as the Court deems appropriate.

24.     The failure of Defendant BTW to pay the amounts owed to the Plans was willful, wanton and malicious and was intended to cause injury and has caused injury to the Plans. The Directors are therefore entitled to an award of punitive damages as "other legal relief" pursuant to ERISA section 502(g)(2)(E) [29 U.S.C. § 1132(g)(2)(E)].

## PRAYER FOR RELIEF

WHEREFORE, the Plans pray for judgment against Defendant BTW Productions, Inc. as follows:

1. for unpaid payroll contributions to the Plans in the amount of $8,444.83;
2. for liquidated damages in an amount to be established at trial;
3. for interest at the rate of 12 percent on all fringe-benefit contributions from due dates;
4. for reasonable attorneys' fees and costs of this action incurred by the Directors;
5. for costs of the audit in amounts to be proved at trial;
6. for punitive damages; and
7. for such additional relief as this Court deems just and proper.

Dated: New York, New York
       July 12, 2019

                                        Respectfully submitted,

                                        SPIVAK LIPTON LLP
                                        *Attorneys for Plaintiffs*

                                        By:    */s/ Elizabeth Sprotzer*
                                        Elizabeth Sprotzer
                                        Gillian Costello
                                        1700 Broadway, 21st Floor
                                        New York, New York 10019
                                        Tel: (212) 765-2100
                                        Fax: (212) 765-8954
                                        esprotzer@spivaklipton.com